JESSIE E. BRIGGS v. THE FIREMAN'S FUND INSURANCE COMPANY OF SAN FRANCISCO.

*Fire insurance—Application—Breach of warranty—Overvaluation.*
*—Waiver of forfeiture of policy—Arbitration.*

1. An application for insurance, and the policy issued thereon, taken together, constitute the agreement between the parties; and the representations as to value in such application are warranties on the part of the assured, and form a material part of the agreement, and are not affected by a provision in the policy limiting the liability of the insurer to the cash value of the property, which is all it could be compelled to pay on an *unvalued* policy, without such clause.

2. Where an application for insurance was filled out by the agent of the insurer, and delivered to the husband of the applicant, who returned it signed by his wife, and in a suit by her to recover for a loss, in which an overvaluation was claimed, there was an entire want of evidence showing the *source* of the agent's information as to the *facts* stated in the application, and also as to what occurred when the application was presented to the plaintiff for her signature,—

*Held,* that the presumption is that she *read* the application, and was *fully* acquainted with its contents ; and that, to relieve her from the effect of any misrepresentations as to the *value* of the property to be insured, contained in the application, it must be shown either that she was *imposed* upon in signing it, or that the agent knew the *true* value of the building, and *overvalued* it in the application, with *knowledge* that such statement was incorrect.

3. In *such* a case, the question of whether there was an overvaluation was properly submitted to the jury, but the submission with it of the question of an alleged waiver of the forfeiture provided for in case of such overvaluation, without any evidence tending to show such waiver, or from which it could be inferred, was error, and the verdict, being general, must be set aside.

4. Where an agent of a fire insurance company went to the scene of a fire, and made inquiries, the nature of which was not shown, and requested an arbitration to fix the amount of loss, one-half of the expense of which was paid by the assured, which arbitration and division were provided for in the policy, which further stipulated that such submission should not be taken as a waiver on the part of the company of the conditions of the policy,—

*Held,* that the company had a right to make inquiries and investigate as to the *origin* of the fire and *value* of the property, and that, in view of the facts stated, there was no room for claiming a waiver on the part of the company.

Error to Oakland. (Stickney, J.) Argued January 25, 1887. Decided February 10, 1887.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*F. A. Baker,* for appellant.

*Thomas J. Davis,* for plaintiff.

CHAMPLIN, J. This is an action on a fire insurance policy.

The defense is that of overvaluation. In her application for insurance plaintiff stated the value of the dwelling house to be $1,800, and the defendant insured it for $1,400. The application also contained this clause:

"And the said applicant hereby covenants and agrees to and with the Fireman's Fund Insurance Company that the foregoing is a just, full, and true exposition of all facts and circumstances in regard to the condition, situation, value, and risk of the property to be insured ; and said answers are considered the basis on which insurance is to be effected, and the same is understood as incorporated in and forming a part of the policy, and a warranty on the part of the assured, whether referred to in that instrument or not, and whether the said answers have been written by the agent of said company or not; and the assured further covenants and agrees to make known to the said company any material change in the risk, or its surroundings, which may take place during the life of said policy."

The policy contains this provision:

"Any false representation by the assured of the condition, situation,. or occupancy of the property, or any omission to make known any fact material to the risk, or an overvaluation, or any misrepresentation whatever, either in a written application or otherwise,  *   *   *   then, and in every such case, this policy shall be void."

And also the further provision:

"The cash value of property destroyed or damaged by fire shall in no case exceed what would be the cost to the assured, at the time of the fire, of replacing the same, and in case of the depreciation of such property by reason of age, wear and tear, location, change in style, lack of adaptation to profitable use, or other causes, a suitable deduction from the cash cost of replacing shall be made, to ascertain the actual cash value; and the assured hereby expressly waives all right, arising under any state or other law, to collect of this company, in case of loss, any sum in excess of the true and cash value of the property herein insured, which value shall be determined as herein provided."    •

Another clause provides that, in case differences shall arise concerning the amount of any loss or damage, arbitrators

shall be appointed at the request of either party, and their award shall be binding on the parties as to the amount of loss or damage, but they shall not decide the liability of the company under the policy; one-half of the appraisers' fee to be paid by the assured.

Under this provision of the policy the defendant requested a submission to arbitration, and the parties signed a submission in writing, in which it was stipulated that the appointment of arbitrators was without reference to any other question or matters of difference within the terms and condition of the insurance, and was not to be taken as any waiver on the part of the company of the conditions of the policy in case they should elect to avail themselves thereof; and it was expressly agreed that the appraisers were to take into consideration the age, condition, and location of the premises before the fire, and also the value of the walls, materials, or any portion of said building saved, and, after making an estimate of the cost of replacing said building, a proper deduction should be made by them for the difference between the value of a new or replaced building and the one insured.

The appraisers met, and, after making the proper deductions, determined the damage to be $973.87. In arriving at this amount, one of them testified they deducted 25 per cent., and the other that they deducted 30 per cent., from the value of the old building for new. There was testimony in the case which placed the value of the building, including foundation, at $1,900, others at $1,800, and so on down to $800. The jury were asked to find specially what the cash value of the house destroyed was at the time it was insured, and they found it to have been $1,450.

The circuit court instructed the jury that—

"The application is a part of the contract and policy, and a warranty, and the representations of value contained in it are warranties. If the jury find that the plaintiff made a substantial overvaluation of the property in her application for the insurance, the defendant company is entitled to your

verdict. * * While some latitude may be allowed for differences of opinion in determining a question of value, yet if, after making due allowances for such differences, the jury find that there was an overvaluation, the plaintiff cannot recover."

This instruction to the jury was correct. The application and the policy bear the same date, and refer to the same subject-matter. They are substantially one instrument. Taken together, they constitute the agreement between the parties. The representation as to the value of the property insured was material. The object of requiring a true statement of the value of the property insured is apparent. It enables the company to determine the amount of the risk they are willing to assume. No company doing a legitimate business would insure property by an unvalued policy to its full cash value, without charging at least a premium proportionate to the risk. The temptation to convert property insured to its full cash value into money, at the expense of the insurance company, is recognized as one of the hazards attending such insurance.

In this case it will be observed that the company did not intend to insure the property to the extent of its cash value; for, while such value was represented to be $1,800, the risk assumed by the company was only to the extent of $1,400, or about three-fourths of its cash value as represented; and, if the finding of the jury is a just criterion of the true cash value of the building destroyed, the plaintiff obtained an insurance within $50 of its actual cash value. Nor is this warranty of the value contained in the policy neutralized or rendered inoperative or immaterial by that provision of the policy which provides that in no case shall the company be liable to pay more than the true cash value of the property insured. This is all they could be compelled to pay in an unvalued policy, without such clause, and was evidently inserted for greater caution, and to prevent a claim being set up that the policy is a valued one.

The testimony showed that the application for the insurance was filled out by the agent of the company, and delivered to the plaintiff's husband, who took it to his wife, and afterwards returned it to the agent, signed by the plaintiff; and upon this testimony the plaintiff's counsel claims that the plaintiff is not responsible for any misrepresentations which it contains. There was no evidence introduced showing the source of the agent's information as to the facts stated in the application. Likewise there is an entire absence of testimony showing what occurred when the application was presented to the plaintiff for her signature. The presumption is that she read the application, and was fully acquainted with its contents. Before the rule contended for by the plaintiff could apply, it should be shown either that the plaintiff was imposed upon in signing the application, or that the agent knew the true value of the building, and overvalued it in the application, knowing that such statement was incorrect. *Stone v. Hawkeye Ins. Co.*, 68 Iowa, 737 (28 N. W. Rep. 47); May, Ins. §§ 141–144; 2 Wood, Ins. (2d Ed.) 1161–1169.

It is urged that the case of *Schmidt v. City & Village Fire Ins. Co.*, 55 Mich. 432, decides the question as to overvaluation in this case. That case is distinguishable from this. That was a case of mutual insurance. The charter and by-laws were made a part of the contract of insurance, and it was agreed that the company should not in any case pay more than three-fourths of the cash value of the buildings insured, if they were insured to that amount. With such a provision as this, it could make no difference to the company whether the property was overvalued or not.

Whether or not there was an overvaluation in this case was, under the evidence, properly submitted to the jury; and had this been the only question left to them, and they had found a verdict for the plaintiff under the instructions given upon this subject, we should not consider it proper to

disturb their verdict. But we do not know that the jury found for the plaintiff on this issue, for the reason that the circuit judge submitted to the jury the question whether or not the forfeiture under this clause of the policy had been waived by the company. There is nothing in the record which shows whether the verdict for the plaintiff was based upon the fact that there was no overvaluation, or whether there was an overvaluation, and the forfeiture occasioned thereby had been waived. We have examined the record carefully, and there does not appear the least *scintilla* of evidence tending to show a waiver, or from which it can be inferred. The court erred in submitting that branch of the case to the jury.

It is claimed that the fact of the agent of the company going to the scene of the fire and making inquiries, without showing what such inquiries were, and of requesting an arbitration to fix the amount of the loss, and the plaintiff paying one-half the expense of the arbitrators, constituted a waiver of any forfeiture on the ground of overvaluation. We cannot concede this claim. The company had a right to make inquiries—to investigate—both as to the origin of the fire and the value of the property; and the contract between the parties was that an arbitration for the sole purpose of determining the amount of the loss might be had upon the request of either party, and that the expense thereof should be borne equally; and the agreement to arbitrate expressly stipulated that such submission should not be taken as a waiver on the part of the company of the conditions of the policy. In view of these facts, there is no room for claiming a waiver on the part of the company.

The judgment must be reversed, and a new trial granted.

CAMPBELL, C. J., and MORSE, J., concurred. SHERWOOD, J., did not sit.