WINTON C. ELLIOTT and THE IOWA CENTRAL BUILDING AND
    LOAN ASSOCIATION, Appellants, v. THE MERCHANTS
        AND BANKERS FIRE INSURANCE COMPANY.

Insurance : ELECTION TO WAIVE ARBITRATION.  Where an insurance
    policy provides for arbitration, and reserves to the company the
    option to repair, a demand by it for arbitration precludes its
    afterwards exercising the option to repair, whether or not an
    award was reached.
PLEA AND PROOF.  Where, in an action on an insurance policy,
    defendant pleads and relies on a provision of the policy relating
    to arbitration, an independent agreement to arbitrate is inadmis-
    sible in evidence, it having no bearing on the issue.
POLICY CONSTRUED :  *Waiver.*  A provision of an insurance policy
    that no act done in investigating the loss shall waive any condi-
    tion of the policy does not include things done in arbitrating
    under the policy.

*Appeal from Polk District Court.*—HON. W. A. SPURRIER,
                        Judge.

            SATURDAY, MAY 27, 1899.

    ACTION on insurance policy.  Judgment for the defend-
ant on a directed verdict, and the plaintiffs appeal.—
*Reversed.*

    *C. C. Cole* and *Earle & Prouty* for appellants.

    *Read & Read* for appellee.

    LADD, J.—The policy was issued to Elliott February 9,
1895, covering a dwelling house, and contained a clause,
making the loss, if any, payable to the Iowa Central
Building & Loan Association, the mortgagee, as its inter-
est might appear.  The property was damaged by fire
February 26th following, and on March 8th the defendant
and Elliott entered into an agreement to appraise the

damages. The arbitrators chosen were unable to agree upon the amount of loss or an umpire, and one the twenty-ninth day of April, 1895, the defendant advised Elliott to "take notice that unless the appraisers agree as to the amount of damage to the property, which they were appointed to agree upon, by Saturday, May 4, 1895, we demand permission, under the terms of the policy, to repair or replace the property damaged by fire, upon which you claim a loss under policy No. 9,694; and we hereby demand full and complete specifications of the building by that time." This was accepted by Elliott as a withdrawal of the submission to arbitration, to which he consented, and demanded prompt payment of the loss. The result of their correspondence was the abandonment of arbitration by both parties,— the company insisting on its right to rebuild or repair; and Elliott, that by electing to arbitrate it had waived such right. The determination of this dispute necessarily depends on the language of the policy, a portion of which we set out: "This company shall not be liable hereunder for any loss or damage until notice and proofs of loss shall have been made as herein provided; and the taking of proofs of loss, or statements of assured, or any other act done by way of investigation into the matter of loss and the performance of this contract, shall not waive any condition of this policy, nor any breach thereof. * * * In case of disagreement as to the value of the property, or the amount of loss or damage, the matter shall, at the written request of either party, be submitted to arbitrators,—one to be chosen by the company and one to be chosen by the assured, and, should they be unable to agree, the ones thus chosen to select a third; and the award of such arbitrators, under oath, in writing, shall be conclusive as to the amount of the loss, but shall not determine the liability of the company. Expenses of such arbitration shall be borne equally by the company and the assured. And no suit or action shall be maintained on this policy until such arbitration has been had. The com-

pany reserves the option to repair, rebuild, or replace property destroyed or damaged, or take property at its appraised value, but there can be no abandonment to the company of the property insured." The company may, then, discharge its obligation, in event of loss, in either of two ways: (1) By repairing or rebuilding, or (2) by payment of the loss. If it chooses the former course, the determination of the amount of damages is of no importance to the assured and cannot possibly be of any advantage to the company, save in aiding it to respond at the least possible outlay. Without arbitration, the company may ascertain the actual loss; and this, it would seem, is quite sufficient to enable it to make a just election of the method it will pursue in recouping the damage. That an election to rebuild is a waiver of the right to arbitrate is not questioned, as this, *eo instante,* converts the policy into a building contract. *Zalesky v. Insurance Co.,* 102 Iowa, 512; *Wynkoop v. Insurance Co.,* 91 N. Y. 478. The demand to arbitrate is an election to make payment, for that there is no good reason to measure the extent of the loss in money, save for the purpose of liquidation. Arbitration may require a trial, and invariably involves considerable expense. Can it be supposed that the parties, in making the contract, intended such an outlay by the insured, merely to advise the company by which method (payment or rebuilding) it could escape at the smallest expense, and confer the least advantage on the insured? If so, the company may await arbitration, and then make payment or rebuild, as best subserves its interest, though in either event the assured is bound. In other words, under such an interpretation the company may speculate at the assured's expense, without possibility of loss to itself. The law ought not to countenance a legal contest, even before arbitrators, the sole purpose of which is to enable one of the parties to make choice of methods in discharging

its obligation to the other to the former's advantage, unless expressly so stipulated, but should rather construe the demand for arbitration as an election of that method which will be directly promoted by such a course. That the purpose of arbitration contemplated was the ascertainment of the amount of the damages, with the view of payment, appears from the fact that it might be demanded by either party, while the option of rebuilding was reserved to the company alone. The conclusion we reach is fortified by authority. In *McAllasten v. Insurance Co.*, 156 N. Y. 80 (50 N. E. Rep. 502), the court, in passing upon this point, said: "The policy does not contemplate that, after a contest as to the amount due, the company still has in reserve the right to rebuild. It is a fair construction of the policy that a resort to arbitration by the company is an election to make payment in money." The case of *Scottish Amicable Heritable Securities Ass'n v. Northern Assur. Co.*, found in Sess. Cas. (Scot.) 287, seems to hold that, "if the insurer has treated with the insured on the basis of ascertaining the loss by arbitration it is precluded afterward from exercising its option to rebuild or repair." In *Sutherland v. Society*, 14 Sess. Cas. (Scot.) 775, appraisers were not appointed to arbitrate, but simply to aid in effecting a compromise, and the intimation runs through the opinion that arbitration would preclude a subsequent election to rebuild. The decisions relied on by appellee are not in point. *Platt v. Insurance Co.*, 153 Ill. 113 (38 N. E. Rep. 580), is based on a condition of the policy that arbitration should not affect the rights of either party, save in fixing the value of the damages. See *Briggs v. Insurance Co.*, 65 Mich. 52 (31 N. W. Rep. 616). In *Johnson v. Insurance Co.*, 44 Minn. 396 (43 N. W. Rep. 59), the court simply held that, under the condition of the policy that liability should not be affected thereby, arbitration did not waive a forfeiture. We have been unable to find any case, determined by a court of

last resort, adjudging arbitration not to be inconsistent with the purpose of rebuilding. That an award was not reached is not material, as the demand for arbitration and not the fact, constituted the election; and its abandonment did not reinstate the right to rebuild or repair, already waived by the inconsistent election to make payment in money.

Something is claimed for the agreement to arbitrate. But the answer averred a disagreement as to the amount of damages, and that "this defendant, under the terms and provisions of said policy, requested the said matter should be submitted to arbitration in the manner provided for in said policy," and that, in pursuance of said demand, arbitrators were selected and failed to agree. The defendant having alleged and relied on the provisions of the policy relating to arbitration, and not on the independent agreement, the latter was not admissible in evidence, as it had no bearing on the issues as made. The policy contains no clause obviating the inference of an election, as did those in the cases referred to. While the liability was not determined, the manner of discharging it, if any existed, was fixed upon and can only be met by payment. The things done by way of investigation cannot be construed to include arbitration. That clause refers to inquiries to be made by the defendant and only provides that these shall not operate as a waiver. As the evidence stood, the only matter to pass upon was the amount of damages the plaintiff should recover, and that was for the jury.—REVERSED.