**In re Gary Arthur KISH, individually and d/b/a Kish Sand & Gravel, Gary Kish Farms and Kish Landfill, Debtor.**

**Bankruptcy No. 82–00428.**

United States Bankruptcy Court, E.D. Michigan, S.D.

July 24, 1984.

Robert A. Steadman, Traverse City, Mich., for debtor.

Frank W. Vaydik, Saginaw, Mich., Trustee.

Raymond C. June, Flint, Mich., for trustee.

## MEMORANDUM OPINION AND ORDER

ARTHUR J. SPECTOR, Bankruptcy Judge.

This case is a Chapter 11 proceeding in which a trustee has been appointed. The debtor is in the landfill business. On November 10, 1983, the debtor obtained a license from the Michigan Department of Natural Resources (DNR) to open and operate a new cell (cell #5) in Montrose Township, Genesee County, Michigan. On March 30, 1984, Citizens for Safe Landfills, Inc., a Michigan non-profit corporation, (Citizens) and Montrose Township filed suit in the Genesee County Circuit Court against the debtor, the trustee and the DNR to enjoin the continued operation of cell #5, alleging violations of the Thomas J. Anderson, Gordon Rockwell environmental protection act of 1970, M.C.L. § 691.1201, *et seq.;* M.S.A. § 14.528(201), *et seq.,* and the solid waste management act, M.C.L. § 299.401, *et seq.;* M.S.A. § 13.29(1), *et seq.* On the same day, both plaintiffs moved in this Court for an order lifting the stay to allow the continuation of that lawsuit. On April 10, 1984, the trustee obtained this Court's order requiring Citizens to show cause why it should not be held in contempt for violation of the automatic stay. At the hearing on the order to show cause, the respondent submitted a brief citing 28 U.S.C. § 959 as its basis for proceeding with a lawsuit prior to obtaining leave of this Court. Thereafter the matter was submitted for decision on briefs. Apparently conceding that 11 U.S.C. § 362(b)(4), which excepts from the operation of the automatic stay "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power" applies, the trustee stipulated that Montrose Township could continue the lawsuit in the Circuit Court. The issue now is whether Citizens, a non-governmental entity, was entitled to bring suit without first obtaining a modification of the stay under 11 U.S.C. § 362, for if it was it cannot be held in contempt for doing so.

Since the lawsuit pertains to post-petition activities of the debtor and the trustee, and since the trustee is "carrying on business" connected with the property of the debtor, 28 U.S.C. § 959 controls this case. That statute provides as follows:

"(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

"(b) Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

This section appears to conflict with the automatic stay provided in 11 U.S.C. § 362. Although it has been held that 28 U.S.C. § 959 is an express exception to bankruptcy stays, *In re Campbell*, 13 B.R. 974, 976 (Bankr.D.Idaho 1981), the better view is that the statutes can be harmonized. *In re Investors Funding Corp.*, 547 F.2d 13 (2d Cir.1976). A commentator suggests that the method for harmonizing the two apparently inconsistent provisions is as follows:

"(1) *In personam* suits within the purview of 28 USC § 959 may be instituted without leave of the reorganization court;

"(2) The reorganization court may not properly by blanket injunction foreclose the bringing of suits within the terms of section 959;

"(3) The debtor continued in possession or the trustee, as the case may be, may

not properly contend as a defense to the suit brought against it that the claim should be prosecuted only in the reorganization forum;

"(4) The debtor continued in possession or the trustee, as the case may be, may, however, apply to the reorganization court to enjoin the continuation of the suit;

"(5) And, finally, in the exercise of a sound discretion, the reorganization court has the power in a proper case to enjoin the continuation of such a suit; but that the exercise of a sound discretion must involve consideration of the public policy behind the provisions of 28 USC § 959, the burden that would be placed upon the plaintiff to litigate his suit in the reorganization court, and whether or not the continuation of the suit elsewhere will unduly impede, burden or interfere with the progress of the reorganization case."

1 Collier on Bankruptcy ¶ 3.04[1][b] (15th ed. 1979).

■ The parties agree that this Court, as the one which appointed the trustee, has discretion to enjoin the continuation of the Circuit Court lawsuit and, of course, to enjoin Citizens' participation in it. That is not the question, though. The question is whether, without first obtaining an order modifying the stay, Citizens could commence the state court lawsuit. For the reasons stated herein, the Court holds that it could.

The trustee asserts that 28 U.S.C. § 959(a) was intended to allow suit without leave of court only when the trustee is sued on a contract he had made or for some wrong he had done, but not where the lawsuit would interfere with the title, possession, control, liquidation or distribution of estate assets. However, no case is cited to support this reading. The cases found support the view that 28 U.S.C. § 959 means what its plain words say: "trustees ... may be sued, *without leave of the court appointing them,* with respect to any of their acts or transactions in carrying on business connected with such property."

Even the case cited by the trustee recognized that such is the law whenever "the suit does not have for its purpose and cannot result in depriving the trustee of the possession of any of the property or materially reducing its value." *Furney v. Thompson*, 164 Kan. 294, 188 P.2d 955, 959 (1948) (explaining *Thompson v. State*, 196 Okl. 190, 164 P.2d 232 (1945)). Citizens, by its suit, does not seek to deprive the trustee of anything; it merely seeks to have the trustee use its property in a manner consonant with state environmental laws.

■ The trustee notes that the *Investors Funding Corp.* case (and, by implication, almost all of the other cases decided on this point) were based upon the former Bankruptcy Act[1] and that the Bankruptcy Code,[2] which applies in this case, contains a more inclusive and specific stay than did the Act. The trustee argues that 11 U.S.C. § 362(a) "operates as a stay, applicable to all entities, of ... (3) any act to obtain possession of property of the estate or of property from the estate." The trustee claims that the filing of the lawsuit, which requests the Circuit Court to force the DNR to revoke the operating license of the landfill, is an act to obtain possession of property of or from the estate, and therefore, the stay should control.

Although the trustee's position that a public license is included within the broad definition of "property of the estate" contained in 11 U.S.C. § 541 is correct; *In re Matto's, Inc.*, 9 B.R. 89, 7 B.C.D. 351, 4 C.B.C.2d 136 (Bankr.E.D.Mich.1981); it does not follow that a lawsuit seeking to destroy that property interest is an action to "obtain possession" of that property. Any action to compel compliance with state regulatory provisions could devalue the property of an estate, even to the extent of destroying the property interest entirely. Its effect, however, does not transform the action from what is basically an enforce-

ment action into one to "obtain property of the estate". Citizens does not seek to "obtain" the license from the trustee, but merely to have the State forfeit that property interest. The word "obtain" is defined as: "to get hold of by effort; to get possession of; to procure; to *acquire,* in any way." Black's Law Dictionary (5th ed. 1979) (emphasis added). The word "obtain", for purposes of § 362, includes within it not only the loss of the interest by the estate, but the acquisition of that interest by the interested party. If Congress had intended the result urged by the trustee, it would have used the words "deprive the estate of" in place of the word "obtain". The necessary element of acquisition does not exist in this case. Therefore the lawsuit is not an act to obtain possession of property of the estate, and the arguably more inclusive sweep of the Code's stay is immaterial. Cases decided under the Bankruptcy Act, especially including the *Investors Funding Corp.* case, are good precedent.[3]

Therefore, applying the harmonizing construction recommended by the commentator, and finding that the lawsuit was *in personam* in nature, the Court holds that Citizens was free to bring its suit in state court without first obtaining leave of this Court. It follows, then, that the act of filing the suit without such leave was in no way contumacious.

■ The trustee also requests the Court to exercise its discretion and enjoin Citizens from continuing its state court action. The standards for the exercise of that discretion are found in the *Investors Funding Corp.* case. The court stated:

"The harmonizing construction that we adopt, one which we believe accords with the legislative history of § 959(a) ... is that a court action against reorganization trustees relating to business activities of the bankrupt carried on by the trustee

---

1. Bankruptcy Act of 1898, as amended.

2. Bankruptcy Reform Act of 1978.

3. The adoption of the Bankruptcy Reform Act of 1978 made no material substantive change in

the language or the effect of 28 U.S.C. § 959. *In re The Briarcliff,* 15 B.R. 864, 867 (D.N.J. 1981); *In re LePeck Construction Corp.,* 14 B.R. 195, 196 (Bankr.E.D.N.Y.1981).

may proceed unless the bankruptcy court, exercising sound discretion, finds that the action would embarrass, burden, delay or otherwise impede the reorganization proceedings.

"The fact that the value of the estate administered by the trustee might be reduced by a suit is not alone sufficient to justify an injunction ....

"A reorganization court, therefore, should generally make specific, sequential findings before it enjoins a state suit against a reorganization trustee. It must decide first whether the lawsuit relates to 'routine' business activities of the debtor that are carried on by the trustee. If the lawsuit is not so related, it may be enjoined. If the lawsuit is so related, however, the court must make a further finding before an injunction may issue: that the suit will embarrass, burden, delay or otherwise impede the reorganization proceeding."

Investors Funding Corp., *supra* at 16. (Citations omitted).

Neither logic nor public policy support the enjoining of the state litigation or Citizens' participation in it. Applying the above standards, it is obvious that the lawsuit in question does relate to the "routine" business activities of the debtor that are carried on by the trustee. Therefore, the Court must inquire whether the suit or Citizens' joining as co-plaintiff will "embarrass, burden, delay or otherwise impede the reorganization proceeding".

In support of this position, the trustee cites *In re Revere Copper and Brass, Inc.*, 32 B.R. 725 (S.D.N.Y.1983), *appeal docketed* No. 83–5053 (2d Cir. Sept. 26, 1983). In that case another citizens group brought suit to enforce the terms and conditions of the debtor-in-possession's waste water discharge permit. The bankruptcy court held that the automatic stay of 11 U.S.C. § 362 applied notwithstanding 28 U.S.C. § 959. The district court affirmed, holding that as the "thrust of the complaint" was concerned with pre-petition conduct and not the continued operation of the business, § 959 did not apply. In dictum, the district court stated that, after considering the fac-

tors set forth in the *Investors Funding Corp.* case, it appeared "that this suit could easily 'embarrass, burden, delay or otherwise impede the reorganization proceedings.' " *Id.* at 728. It is this language upon which the trustee relies. Besides the fact that this language was clearly dictum, there appears to be a dirth of factual support in the record for the district court's conclusion. Therefore, this case is not authority for the trustee's proposition.

Another case which lends support to the trustee's argument is *Nashville White Trucks, Inc. v. Deutscher*, 731 F.2d 376 (6th Cir.1984). In that case, the court held that 11 U.S.C. § 362 acted to prohibit the Tennessee Commissioner of Revenue from taking any action to collect or assess from the Chapter 11 trustee unpaid sales taxes incurred by the debtor while it operated its business as a debtor-in-possession, notwithstanding the effect of 28 U.S.C. § 960. That section is similar to 28 U.S.C. § 959, with the exception that it refers specifically to the payment of all local taxes, as opposed to the obeying of local regulations, by anyone conducting business under the authority of a United States court. There, the Sixth Circuit held that although it was undoubtedly improper for the debtor-in-possession to continue operating the business without paying all federal and state taxes, the unilateral action by the Commissioner of Revenue to attempt to levy directly against the property held by the Chapter 11 trustee would "not only tend to impinge upon similar tax claims of the United States, but would also create chaos in the administration of the bankrupt's estate—the very problems which the automatic stay provisions of § 362 were designed to alleviate". *Id.* at 378. Inasmuch as that case dealt with the attempted seizure of property of the estate for liquidation for the payment of taxes, it is clear that § 362 should take precedence. The primary purpose of § 362 is to prevent the piecemeal liquidation of a debtor company by the piranha-like attacks of creditors. As the Sixth Circuit noted, there were other postpetition taxes which were unpaid, and the bankruptcy court was best suited to see to it that an orderly and equitable distribution

of the assets was made according to the priorities of the Bankruptcy Code. To allow the State of Tennessee to win a race to seize the assets would be to frustrate the purposes of the Bankruptcy Code. Therefore, that case, although dealing with a similar friction between federal statutes, and with the interplay of state laws, is not apposite here.

A case which carefully considers the various factors involved in the exercise of this type of discretion is *In re Charles George Land Reclamation Trust*, 30 B.R. 918 (Bankr.D.Mass.1983). In that case, the United States Trustee, the Commonwealth of Massachusetts, and the Town of Tyngsboro moved to dismiss the debtor's petition for relief, which had already been converted from Chapter 11 to Chapter 7. The court discussed and rested its decision upon the effect of 28 U.S.C. § 959. There, the federal Environmental Protection Agency had designated the debtor's property as one of the worst hazardous waste sites in the country and had established it as a top priority for clean-up operations under the federal Superfund. The court interpreted 28 U.S.C. § 959(b) as requiring the trustee to comply with the environmental regulations or suffer daily penalties of $25,000. Although the motion before that court was one to dismiss the Chapter 7 proceedings, as opposed to the motion to modify the stay here, the interplay between the rights of the debtor under the Bankruptcy Code and the rights of the non-debtor participants under 28 U.S.C. § 959 is similar. That court determined that the interests of the public, as represented by the governmental agencies, outweighed the interests of the debtor under the Bankruptcy Code, and therefore dismissed the case. The matter was then left to determination and administration by the state court which had previously exercised jurisdiction over the matter.

Any lawsuit against a Chapter 11 trustee will, to some extent, "embarrass, burden, delay or otherwise impede the reorganization proceeding." However, the fact that, due to Montrose Township's right to continue its prosecution in state court, this lawsuit will continue there notwithstanding the outcome of this motion severely detracts from the trustee's position. Since he must defend that lawsuit anyway, the slightly increased burden which the trustee might suffer by the addition of another plaintiff pressing identical allegations is not sufficient to require the Court to exercise its exceptional powers to enjoin a state court lawsuit, or Citizens' involvement therein.

■ Although unquestionably Citizens, through the lawsuit, seeks to interfere with the trustee's control of estate assets, 28 U.S.C. § 959 was intended to allow it to do just that. Trustees who operate the business of a debtor are bound to abide by all state laws and regulations respecting the operation and use of the assets of such business. An excellent discussion of the supremacy of 28 U.S.C. § 959 over the effect of bankruptcy stays in the area of state regulatory matters is found in *In re The Briarcliff*, 15 B.R. 864, 868 (D.N.J. 1981). That case dealt with the debtor's request to enjoin the activities of a local rent levelling board. The court opined:

"The wording of the stays ... is very broad and leads one easily to the mistaken conclusion that all actions, even those by State and local governments, are stayed. It's only when 28 USC § 959 is considered, are the limits of the stay clearly drawn. No case which has upheld a stay as applied to governmental agencies has ever considered 28 USC § 959....

"The trend of recent years must be corrected to re-focus attention on the limitation 28 USC § 959 draws around the power of the bankruptcy courts. It is clearly outside the power of the court to allow an activity continued after filing in bankruptcy to ignore state or local law which all others in the same activity must comply with ....

"Thus, whether a trustee, receiver or manager be appointed in a bankruptcy matter or in some other kind of action or proceeding, the intent of Congress as expressed in 28 USC § 959 operates to direct that such persons, as officers of the court, are to comply with applicable State and local law while they carry on

their activities. If such a person conducts a retail business, for example, he must collect and remit applicable sales taxes. If he sells products subject to price regulation, such as cigarettes, he is required to comply. In this case, the debtor in possession is conducting an apartment rental business, and so must comply with rent levelling ordinances. The proper forum for resolving disputes in that regard is the regulatory agency, not the bankruptcy court."

(citations omitted).[4] All of the comments of the district court in that case are appropriate in this case. If the debtor and the trustee wish to conduct a landfill business, they must do so in compliance with state environmental protection laws. The proper forum for resolving disputes as to whether the trustee is complying with such laws is either the regulatory agency or the court designated by the substantive law to resolve such disputes. In this case, that is the state court, not the bankruptcy court.

The debtor is presently conducting business in other cells, and unless and until the state court enjoins continuation of the debtor's operation of cell # 5,[5] no burden would be put upon the estate other than the burden to litigate and defend the action. Such a burden would exist whether the action is prosecuted in state or bankruptcy court. One way or another, either the bankruptcy court or the Genesee County Circuit Court would have to decide the merits of this lawsuit. Although in matters of commercial law, bankruptcy courts have frequently taken the conceited but probably accurate view that they are specialized courts of commercial law, better suited to determine such questions than state courts, such chauvinism is not justified in cases of this type. Indeed, on the question of expertise, the state court must be given the nod when dealing with questions of the application of state environmental laws.[6]

For the reasons stated, the order to Citizens to show cause why it should not be held in contempt is hereby QUASHED and the trustee's request to enjoin Citizens from prosecuting the state court lawsuit is hereby DENIED.

---

**4.** *Also see In re Canarico Quarries, Inc.,* 466 F.Supp. 1333 (D.P.R.1979).

**5.** This can only happen if the court finds that the continued operation of that cell would probably have an injurious effect upon the natural resources of the State of Michigan. *West Michigan Environmental Action Council v. Natural Resources Commission,* 405 Mich. 741, 275 N.W.2d 538 (1979), *cert. denied,* 444 U.S. 941, 100 S.Ct. 295, 62 L.Ed.2d 307 (1979); *Michigan United Conservation Clubs v. Anthony,* 90 Mich. App. 99, 280 N.W.2d 883 (1979); *Wayne County Dep't of Health, Air Pollution Control Div. v. Olsonite Corp.,* 79 Mich.App. 668, 263 N.W.2d 778 (1977).

**6.** *See In re Kennise Diversified Corp.,* 34 B.R. 237, 243, 245, 11 B.C.D. 189, 193, 194, 9 C.B.C.2d 778, 785, 788 (Bankr.S.D.N.Y.1983): "Bankruptcy Code § 362(b)(4) and 28 U.S.C. § 959 form a smooth continuum and make it apparent that Kennise as debtor in possession must operate its Building according to the dictates of non-bankruptcy law that would apply if there were no Chapter 11 case. This court sees no reason to substitute the bankruptcy court itself for the Civil Court as the enforcement forum, which has special expertise in these matters .... The provisions of the Bankruptcy Code do not and are not intended to provide an automatic mechanism for relieving property owners of the unpleasant effects of valid local laws embodying police and regulatory provisions."